# <u>Exhibit A</u>

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF RAMSEY                                SECOND JUDICIAL DISTRICT

James H. Gilbert, as Special Administrator of        Court File No.: _____
the Estate of Kurt A. Amplatz,                              Judge: _____
                                                                    Case Type: Contract
                  Plaintiff,

vs.

Cook Group, Inc.; Cook Inc.; Cook Medical            **SUMMONS**
Technologies LLC; Cook Medical LLC; and
Cook Medical Holdings LLC,

                  Defendants.

---

**THIS SUMMONS IS DIRECTED TO: COOK MEDICAL TECHNOLOGIES LLC, C/O REGISTERED AGENT, CORPORATION SERVICE COMPANY, 135 NORTH PENNSYLVANIA STREET, SUITE 1610, INDIANAPOLIS, IN 46204.**

**1. YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

**2. YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail **a written response,** called an Answer, to the person who signed this summons within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at 100 South 5th Street, Suite 1500, Minneapolis, MN 55402-1254.

**3. YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

**4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

> **BASSFORD REMELE**
> *A Professional Association*

Date:  November 4, 2021

By:  *s/ Leah Ceee O. Boomsma*
Lewis A. Remele, Jr. (#90724)
Jeffrey R. Mulder (#389205)
Leah Ceee O. Boomsma (#389885)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone:   (612) 333-3000
Facsimile:    (612) 333-8829
lremele@bassford.com
jmulder@bassford.com
lboomsma@bassford.com

Attorneys for Plaintiff

4858-4636-5698 v.1

**STATE OF MINNESOTA**                                    **DISTRICT COURT**

**COUNTY OF RAMSEY**                              **SECOND JUDICIAL DISTRICT**

---

James H. Gilbert, as Special Administrator of          Court File No.: _____
the Estate of Kurt A. Amplatz,                                    Judge: _____
                                                                          Case Type:  Contract
                        Plaintiff,

vs.

                                                                          **COMPLAINT**

Cook Group, Inc.; Cook Inc.; Cook Medical
Technologies LLC; Cook Medical LLC; Cook
Medical Holdings LLC,

                        Defendants.

---

The Estate of Kurt A. Amplatz, through its Special Administrator, James H. Gilbert ("Plaintiff"), for its Complaint against Cook Group, Inc., Cook Inc., Cook Medical Technologies LLC, Cook Medical LLC, Cook Medical Holdings LLC, (collectively "Cook Medical") states and alleges as follows:

## PARTIES

1.       Plaintiff is James H. Gilbert acting as the Special Administrator for the Estate of Kurt A. Amplatz ("the Estate") for the limited purpose of pursuing and protecting the Estate's interest in royalty payments from Cook Medical.  Doctor Kurt Amplatz died on November 6, 2019. His estate is the subject of the pending matter *Estate of Kurt A. Amplatz, Decedent*, No. 62-PR-20-133 (Ramsey County, Minnesota) ("Probate Proceeding").  Plaintiff's appointment was made by Order of Formal Appointment of Special Administrator on September 24, 2021 in that Probate Proceeding and is incorporated into this Complaint as **Exhibit A**.

2.       Defendant Cook Medical LLC is a privately-owned Indiana limited liability company with its principal place of business located at 1025 West Acuff Road, Bloomington,

1

Indiana. Defendant Cook Medical LLC does business in the State of Minnesota, including Ramsey County. On information and belief, at all times relevant to this action, Defendant Cook Medical LLC is an Indiana limited liability company whose sole member is Defendant Cook Group, Inc., which in turn is incorporated under the laws of the state of Indiana and has its principal place of business in Indiana. Defendant Cook Medical LLC manufactured, prepared, promoted, marketed, distributed, and/or sold products developed by Dr. Kurt Amplatz and/or used the Amplatz name for the promotion, marketing, distributing, and/or sale of products throughout the United States and internationally, including in Minnesota. At all times relevant hereto, Defendant Cook Medical LLC was engaged in business in Minnesota, conducted substantial business activities in Minnesota, and derived substantial revenue from business within the State of Minnesota. The registered agent for Defendant Cook Medical LLC is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

3.      Defendant Cook Group, Inc. is an Indiana corporation with its principal place of business located at 750 North Daniels Way, P.O. Box 489, Bloomington, Indiana. Defendant Cook Group, Inc. does business in the State of Minnesota, including Ramsey County. At all times relevant to this action, Defendant Cook Group, Inc. manufactured, prepared, promoted, marketed, distributed, and/or sold products developed by Dr. Amplatz and/or used the Amplatz name for the promotion, marketing, distributing, and/or sale of products throughout the United States and internationally, including in Minnesota. At all times relevant hereto, Defendant Cook Group, Inc. was engaged in business in Minnesota, conducted substantial business activities in Minnesota, and derived substantial revenue from business within the State of Minnesota. The registered agent for Defendant Cook Group, Inc. is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

2

4.      On information and belief, Cook Group, Inc. is a privately-owned for-profit corporation with wholly owned subsidiaries that it controls, including Cook Inc., Cook Medical Technologies LLC, and Cook Medical Holdings LLC.

5.      Defendant Cook, Inc. is an Indiana corporation with its principal place of business located at 750 Daniels Way, P.O. Box 489, Bloomington, Indiana.  Defendant Cook, Inc. does business in the State of Minnesota, including Ramsey County.  At all times relevant to this action, Defendant Cook, Inc. manufactured, prepared, promoted, marketed, distributed, and/or sold products developed by Dr. Amplatz and/or used the Amplatz name for the promotion, marketing, distributing, and/or sale of products throughout the United States and internationally, including in Minnesota.  At all times relevant hereto, Defendant Cook, Inc. was engaged in business in Minnesota, conducted substantial business activities in Minnesota, and derived substantial revenue from business within the State of Minnesota.  The registered agent for Defendant Cook, Inc. is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

6.      Defendant Cook Medical Technologies LLC is an Indiana limited liability company with its principal place of business located at 750 North Daniels Way, P.O. Box 489, Bloomington, Indiana.  Defendant Cook Medical Technologies LLC does business in the State of Minnesota, including Ramsey County.   At all times relevant to this action, Defendant Cook Medical Technologies LLC manufactured, prepared, promoted, marketed, distributed, and/or sold products developed by Dr. Amplatz and/or used the Amplatz name for the promotion, marketing, distributing, and/or sale of products throughout the United States and internationally, including in Minnesota. At all times relevant hereto, Defendant Cook Medical Technologies LLC was engaged in business in Minnesota, conducted substantial business activities in Minnesota, and derived

3

substantial revenue from business within the State of Minnesota. The registered agent for Defendant Cook Medical Technologies LLC is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

7.     Defendant Cook Medical Holdings LLC is an Indiana limited liability company with its principal place of business located at 750 Daniels Way, P.O. Box 489, Bloomington, Indiana. Defendant Cook Medical Holdings LLC does business in the State of Minnesota, including Ramsey County. At all times relevant to this action, Defendant Cook Medical Holdings LLC manufactured, prepared, promoted, marketed, distributed, and/or sold products developed by Dr. Amplatz and/or used the Amplatz name for the promotion, marketing, distributing, and/or sale of products throughout the United States and internationally, including in Minnesota. At all times relevant hereto, Defendant Cook Medical Holdings LLC was engaged in business in Minnesota, conducted substantial business activities in Minnesota, and derived substantial revenue from business within the State of Minnesota. The registered agent for Defendant Cook Medical Holdings LLC is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

8.     Defendants Cook Group, Inc., Cook Inc., Cook Medical Technologies LLC, Cook Medical LLC, and Cook Medical Holdings LLC are collectively referred to as "Cook Medical" herein. At all times, the Cook Medical defendants possessed a unity of interest amongst themselves. Cook Medical LLC and Cook Group, Inc. exercised control over their subsidiaries and affiliates. As such, each Cook Defendant is jointly and severally liable to Plaintiff for the losses and damages alleged herein.

4

## JURISDICTION AND VENUE

9.      Jurisdiction is appropriate under Minn. Stat. § 543.19 because the causes of action arise from acts committed by Cook Medical in Minnesota and acts committed by Cook Medical outside of Minnesota that have caused injury to Dr. Amplatz and his estate in Minnesota. In addition, jurisdiction is appropriate because the Estate is administered in Minnesota. This Court has personal jurisdiction over the Cook Medical defendants because they have sufficient minimum contacts such that asserting jurisdiction over the Cook Medical defendants does not offend traditional notions of fair play and substantial justice.  The Cook Medical defendants have conducted and continue to conduct substantial and systematic business activities related to the manufacture, sale, and distribution of products developed by Dr. Amplatz in this jurisdiction and/or related to the use of the Amplatz name in this jurisdiction.  Such activities include, but are not limited to: sale of products developed by Dr. Amplatz in this jurisdiction; advertising and marketing products developed by Dr. Amplatz and use of the Amplatz name in such advertising and marketing in this jurisdiction; and maintenance of a website and product catalog that includes products developed by Dr. Amplatz and use of the Amplatz name directed to all states, including Minnesota.  The Cook Medical defendants also engaged in negotiations and royalty agreements with Dr. Amplatz in Minnesota and made payments to Dr. Amplatz in Minnesota for royalties on the sale of products that included sales within Minnesota.

10.     Venue is proper in Ramsey County pursuant to Minn. Stat. § 542.02 and Minn. Stat. § 524.1-303.

## FACTUAL BACKGROUND

### I.      The 1983 Royalty Agreement

11.      Over the past five decades, while residing in Minnesota, Dr. Kurt A. Amplatz developed various medical technologies in the field of urology and cardiology.  In the early 1980s, Dr. Amplatz entered into negotiations and ultimately a written contract with Cook Medical permitting Cook Medical to manufacture and sell certain of Amplatz's technologies in exchange for a 4% royalty on the net selling price, to be paid annually and split evenly between Amplatz and his co-inventor Frank Kotula.  Dr. Amplatz was located in Minnesota and payments were to be made to his Minnesota address.

12.      The written agreement evidencing the royalty agreement was executed in March of 1983, retroactive to begin in 1982, and set to automatically renew after three years ("the 1983 Royalty Agreement").

13.      Following execution, Dr. Amplatz and Cook Medical agreed to modify the written agreement through informal means, including adding additional products through letters of understanding.  As Dr. Amplatz developed new technology and devices, Cook Medical agreed to incorporate those new products into the same royalty agreement.  For example, in 1984, Cook Medical acknowledged its manufacture and sale of a specific dilator developed by Dr. Amplatz and agreed to retroactively honor the royalty payment rate agreed upon in 1983.

14.      On November 21, 1984, Cook Medical informed Dr. Amplatz in writing that all royalty payments would be made to Dr. Amplatz's survivors in case of his death.

15.      From the time of execution through current, Cook Medical has and continues to manufacture and sell at least 250 of the products listed on **Exhibit B** for which royalties are to be paid under this contract.

6

16.     From the date of execution through current, none of the parties provided notice of termination such that the agreement continues to automatically renew.  On information and belief, Cook Medical paid Dr. Amplatz annually for his half of the 4% royalty (i.e., a 2% royalty), with the last payment received in early 2019 for royalties earned on the net sale of 253 products in the year 2018, after which time Cook Medical has failed to make required payments.

17.     Payments remain due and owing on the net sales of the same 253 products in years 2019 to current.

18.     At the time of this Complaint, Cook Medical has and continues to manufacture and sell the products governed by the 1983 Royalty Agreement.

**II.     The 1995 Royalty Agreement**

19.     Dr. Amplatz and Cook Medical entered into a second royalty agreement in July of 1995 in which Cook Medical agreed to pay Dr. Amplatz a 1% royalty on the net sales for the exclusive right to manufacture a Madduri/Amplatz Urethral Access Set and the exclusive right to use the Amplatz name for such product ("the 1995 Royalty Agreement").  Since execution, Cook Medical agreed to encompass additional related products within the terms of the 1995 Royalty Agreement, including at least 100 products identified on **Exhibit B**.

20.     The royalty is paid "biannually, during the months of January and July" and the agreement renews automatically.  From the date of execution through current, none of the parties have provided notice of termination such that the agreement continues to automatically renew.

21.     Cook Medical has paid Amplatz biannually for his 1% royalty.  On information and belief, the last payment received was in August of 2019 for royalties earned on the net sales of more than 110 products identified on **Exhibit B** through the first half of 2019, after which time Cook Medical has failed to make required payments.

7

22.     Payments remain due and owing on the net sale of the same 110 products for remainder for 2019 through current.

23.     At the time of this Complaint, Cook Medical has and continues to manufacture and sell the products governed by this 1995 Royalty Agreement and continues to use the Amplatz name is advertisement and sale of the same.

### III.    Dr. Amplatz's Ongoing Performance and Cook Medical's Refusal to Pay

24.     From the time both the 1983 Royalty Agreement and the 1995 Royalty Agreement were each executed through the date of Dr. Amplatz's death, Cook Medical continued to perform under the terms of each Agreement and Dr. Amplatz relied on that performance.

25.     Cook Medical continued to sell the products governed by the terms of each of those written Agreements, and Dr. Amplatz continued to allow Cook Medical to manufacture and sell those products as well as to use the Amplatz name in relation to those products.

26.     In return, Cook Medical made annual payments consistent with the 1983 Royalty Agreement in the first quarter of each year for royalties on net sales of the prior calendar year, and made biannual payments consistent with the 1995 Royalty Agreement in January and July of each year for net sales of the prior six months.

27.     Dr. Amplatz relied on the Royalty Agreements and Cook Medical's ongoing performance in accordance with the terms of those Agreements in permitting Cook Medical the rights to manufacture and sell his technology, as well as to continue to use his name.

28.     Cook Medical was aware it was making payments to Dr. Amplatz.  In early 2019, Cook Medical discovered that one payment made under the 1983 Royalty Agreement issued by check in February of 2018 had not been deposited by Dr. Amplatz.  Cook Medical confirmed with Dr. Amplatz that he should have received that payment, and upon the request of Dr. Amplatz,

8

issued a replacement check in February or March of 2019 to ensure his receipt of that royalty payment.

29.     Payment was made to Dr. Amplatz in August of 2019 under the 1995 Royalty Agreement for net sales from the first half of 2019.

30.     On November 1, 2019, Dr. Amplatz's attorney and co-trustee of the Kurt Amplatz Revocable Trust contacted Cook Medical requesting that all future payments be made directly to the Trust.  Cook Medical did not make that requested change before Dr. Amplatz died on November 6, 2019.

31.     In January of 2020, when the next payments were due under the 1983 Royalty Agreement for royalties earned on net sales for 2019, and were also due under the 1995 Royalty Agreement for net sales in the latter half of 2019, Cook Medical failed to perform.

32.     Upon notice of failure to pay in January 2020, Cook Medical informed the representatives of Dr. Amplatz and his estate that it denies the existence of the two royalty Agreements and suggested that prior payments had been made in error.

33.     Despite that denial, Cook Medical manufactured and sold products under the Amplatz name and used Dr. Amplatz's technologies for the entirety of 2019 and continued to do so even after denying the existence of the Agreements under which Cook Medical would have had any right to such manufacture and sale of these products or to use the Amplatz name.

34.     To this date, Cook Medical continues to manufacture and sell the hundreds of products derived from Dr. Amplatz's technologies, products subject to the two Royalty Agreements, and products for which Cook Medical paid royalties annually and biannually for at least the past two decades.  Cook Medical also continues use the Amplatz name for products and marketing.

9

IV.    **Appointment of Special Administrator**

35.    Following the death of Dr. Amplatz, a probate matter was initiated in Ramsey County, Minnesota. *Estate of Kurt A. Amplatz, Decedent*, No. 62-PR-20-133 (Ramsey County, Minnesota). Two different wills were offered for admission, each nominating a different personal representative. As a result, no personal representative has been appointed.

36.    In light of Cook Medical's refusal to make payment to Dr. Amplatz or the Estate for royalties earned in 2019 through current, a Special Administrator has been appointed for the purpose of "pursing and protecting the Estate's interest in royalty payments from Cook Medical."

37.    James H. Gilbert was selected for that appointment, and therefore brings this Complaint in that capacity on behalf of the Estate of Kurt A. Amplatz.

<div align="center">

**CLAIMS**

**COUNT ONE - BREACH OF THE 1983 ROYALTY AGREEMENT**

</div>

38.    Plaintiff realleges the allegations of the previous paragraphs as though fully stated herein.

39.    Cook Medical and Dr. Amplatz entered into a valid and binding contract via written and oral agreements beginning in 1983 whereby Cook Medical agreed to pay Dr. Amplatz and his survivors royalty payments on various products he developed with and/or disclosed to Cook Medical.

40.    Cook Medical manufactured and sold more than 250 products under the 1983 Royalty Agreement, and Dr. Amplatz allowed Cook Medical to manufacture and sell those products in exchange for a royalty payment.

41.     Cook Medical breached the contract in January of 2020, and continues to breach the contract, by failing to pay Plaintiff the amounts due for net product sales in 2019 through current.

42.     As a direct result of Cook Medical's breach of contract, Plaintiff has been deprived of all amounts due under the 1983 Royalty Agreement, including any interest accruing thereon, and has suffered and will continue to suffer significant irreparable harm due to Cook Medical's ongoing manufacture and sale of Dr. Amplatz's products and use the Amplatz name.

43.     As a result, Plaintiff seeks damages exceeding $50,000 in an exact amount to be determined at trial.

**COUNT TWO - BREACH OF THE 1995 ROYALTY AGREEMENT**

44.     Plaintiff realleges the allegations of the previous paragraphs as though fully stated herein.

45.     Cook Medical and Dr. Amplatz entered into a valid and binding contract via written and oral agreements beginning in 1995 whereby Cook Medical agreed to pay Dr. Amplatz and his survivors royalty payments on various products he developed with and/or disclosed to Cook Medical.

46.     Cook Medical manufactured and sold more than 100 products under the 1995 Royalty Agreement, and Dr. Amplatz allowed Cook Medical to manufacture and sell those products in exchange for a royalty payment.  Dr. Amplatz also allowed Cook Medical to use his name in connection with each of those products in exchange for a royalty payment.

47.     Cook Medical breached the contract in January of 2020, and continues to breach the contract, by failing to pay Plaintiff the amounts due for net product sales in the last half of 2019 through current.

11

48.     As a direct result of Cook Medical's breach of contract, Plaintiff has been deprived of all amounts due under the 1995 Royalty Agreement, including any interest accruing thereon, and has suffered and will continue to suffer significant irreparable harm due to Cook Medical's ongoing manufacture and sale of Dr. Amplatz's products and use the Amplatz name.

49.     As a result, Plaintiff seeks damages exceeding $50,000 in an exact amount to be determined at trial.

<div align="center">

**COUNT THREE – UNJUST ENRICHMENT**

</div>

50.     Plaintiff realleges the allegations of the previous paragraphs as though fully stated herein.

51.     Dr. Amplatz conferred benefits on Cook Medical in the form of providing Cook Medical the right to manufacture and sell the products identified on Exhibit B, and to use the Amplatz name in connection to the sale and marketing of those products.

52.     Cook Medical has received substantial revenue for its manufacture and sale of those products and through the use of the Amplatz name.

53.     The receipt of this benefit was conditioned upon the payment of royalty payments to Dr. Amplatz and, upon his death, to his survivors.

54.     Despite Cook Medical receiving, accepting, and retaining the benefit of the use of Dr. Amplatz's products and name, Cook Medical refuses to continue royalty payments to Dr. Amplatz or the Estate.

55.     Allowing Cook Medical to retain this benefit would unjustly enrich Cook Medical.

56.     Absent payment of amounts to be proved at trial, Plaintiff will be damaged by Cook Medical's unjust enrichment and would have no adequate remedy at law.

## COUNT FOUR – PROMISSORY ESTOPPEL

57.     Plaintiff realleges the allegations of the previous paragraphs as though fully stated herein.

58.     Cook Medical made a clear and definite promise to pay royalties on the net sales of products developed by Dr. Amplatz, and further promised that such royalties would be made to his survivors upon his death.

59.     Cook Medical made the promise intending that Dr. Amplatz would rely on it.

60.     Dr. Amplatz did rely on the promise in continuing to develop products for Cook Medical's manufacture and sale, granting rights to Cook Medical to manufacture and sell those products, and allowing Cook Medical rights to use the Amplatz name with regard to those products.

61.     As a result, Dr. Amplatz allowed the continued manufacture and sale of his products by Cook Medical and further refrained from licensing those same products to alternative manufacturers.

62.     Justice requires the enforcement of Cook Medical's promise to pay royalty payments for its ongoing manufacture, sale, and use of Dr. Amplatz's products and name.

## COUNT FIVE – BREACH OF GOOD FAITH AND FAIR DEALING

63.     Plaintiff realleges the allegations of the previous paragraphs as though fully stated herein.

64.     "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably' hinder the other party's performance of the contract.  Similarly, we have held that the party to a contract cannot take advantage of the failure of a condition precedent when the party itself has frustrated performance of that condition." *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995).

65.     Cook Medical impliedly covenanted to exercise good faith and to deal fairly with Dr. Amplatz in all relevant respects.

66.     Cook Medical breached the covenant of good faith and fair dealing by refusing payment of royalties and denying the existence of any royalty agreement despite (1) paying royalties for multiple decades without objection; and (2) continuing to manufacture, sell, and use Dr. Amplatz's products and name for multiple decades through current.

67.     As a result of Cook Medical's wrongful and inequitable conduct, Plaintiff has suffered damages in excess of $50,000, in an amount to be proved at trial.

<u>**COUNT SIX – UNFAIR COMPETITION**</u>

**(Pled in the alternative)**

68.     Plaintiff realleges the allegations of the previous paragraphs as though fully stated herein.

69.     The Amplatz name has special significance in the medical device industry and in connection with products developed by Dr. Amplatz.

70.     Dr. Amplatz has an exclusive right and protectable interest in the Amplatz name with regard to all products identified on Exhibit B and in the medical device industry throughout the United States.

71.     Cook Medical has and continues to unfairly use the Amplatz name without authorization such that a purchaser is likely to be deceived or misled into believing that the purchaser is buying an authorized Amplatz device but is in fact receiving an unauthorized device from Cook Medical.

72.     The unauthorized use of the Amplatz name has caused financial harm to Dr. Amplatz in excess of $50,000, in an amount to be proved at trial.

## COUNT SEVEN – VIOLATION OF THE RIGHT OF PUBLICITY

**(Pled in the alternative)**

73.     Plaintiff realleges the allegations of the previous paragraphs as though fully stated herein.

74.     The Amplatz name has special significance in the medical device industry and in connection with products developed by Dr. Amplatz.

75.     Dr. Amplatz had an exclusive right and protectable interest in the Amplatz name with regard to all products identified on Exhibit B and in the medical device industry throughout the United States.

76.     Plaintiff has post-mortem rights of publicity in the name of Dr. Amplatz.

77.     Cook Medical has and continues to use the Amplatz name without authorization in violation of Dr. Amplatz's and Plaintiff's right of publicity resulting in pecuniary harm in excess of $50,000, in an amount to be proved at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court's order and judgment directing the following relief:

1.     Finding that Cook Medical has breached the 1983 and 1995 Royalty Agreements for failure to pay royalty amounts due and owning under those agreements;

2.     Finding that Cook Medical has been unjustly enriched through its manufacture and sale of the products developed by Dr. Amplatz, its use of the Amplatz name, and its failure to make royalty payments to Plaintiff;

3.     Finding that Cook Medical promised to pay Dr. Amplatz and his survivors royalty payments for the manufacture and sale of the products in Exhibit B, that Cook Medical intended

Dr. Amplatz to rely on that promise, that Dr. Amplatz relied on that promise to his detriment, and that Cook Medical's promise to pay royalties must be enforced to prevent injustice;

4.    Finding that Cook Medical breached the covenant of good faith and fair dealing in manufacturing, selling, and using Dr. Amplatz's products and name without providing compensation;

5.    Finding, in the alternative, that Cook Medical's unauthorized use of the Amplatz name and constitutes unfair competition and violates Dr. Amplatz's and Plaintiff's right of publicity resulting in harm to Plaintiff;

6.    Ordering that Cook Medical is liable to account for and pay over to Plaintiff payment for all past due royalties, in excess of $50,000 and in an amount to be proved at trial, as well as any other actual and compensatory damages allowed under the agreements or by law; and

7.    Ordering that Cook Medical is liable for any other further relief as the Court may deem just and proper.

## ACKNOWLEDGMENT

Plaintiff hereby acknowledges that sanctions may be imposed under the circumstances set forth in Minn. Stat. § 549.211.

<div style="margin-left:40%">

**BASSFORD REMELE,**
*A Professional Association*

</div>

Dated: November 4, 2021          By: */s/ Lewis A. Remele*
                                 Lewis A. Remele (MN # 90724)
                                 Jeffrey Mulder (MN #0389205)
                                 Leah Ceee O. Boomsma (MN #0389885)
                                 100 South Fifth Street, Suite 1500
                                 Minneapolis, Minnesota 55402-1254
                                 Telephone: (612) 333-3000
                                 Facsimile: (612) 333-8829
                                 lremele@bassford.com
                                 jmulder@bassford.com
                                 lboomsma@bassford.com
                                 *Attorneys for Plaintiff*

16

# EXHIBIT A

Filed in District Court
State of Minnesota
9/24/2021 11:44 AM

STATE OF MINNESOTA
COUNTY OF RAMSEY

DISTRICT COURT
SECOND JUDICIAL DISTRICT

Estate of Kurt A. Amplatz, a/k/a Kurt Anton
Amplatz, Kurt Amplatz, and Kurt Amplatz,
M.D.,

Case No. 62-PR-20-133

Decedent.

**ORDER OF FORMAL APPOINTMENT
OF SPECIAL ADMINISTRATOR**

The Notice of Resignation as Special Administrator of Justice Helen Meyer (Ret.) came

before this Court on August 12, 2021.  The Court, having heard and considered the parties'

positions and how to proceed with the administration of this Estate, determines the following:

1. This Court has jurisdiction and venue in this County is proper.

2. The Decedent Kurt A. Amplatz died on November 6, 2019.

3. There are two Amended Petitions for the Formal Probate of Will and Formal
   Appointment of Personal Representative pending before the Court, one filed by Security
   Bank & Trust Company and one filed by Maria Amplatz.

4. It appears from both Amended Petitions that the Decedent Kurt A. Amplatz died testate.
   However, the Amended Petitions request that the Court admit to probate different Wills
   of the Decedent Kurt A. Amplatz.  The two Wills offered for probate nominate different
   Personal Representatives.

5. The Court issued a Scheduling Order dated March 10, 2021 setting forth dates and
   deadlines in preparation for an evidentiary hearing in the Court's trial block currently
   scheduled for November 15, 2021 through December 3, 2021.

6. No Personal Representative has been appointed.

7. Appointment of a Special Administrator is necessary to protect the Estate because a
   dispute has arisen with Cook Medical regarding royalty payments owed to the Estate.
   Following Decedent Kurt A. Amplatz's death, Cook Medical has continued to sell

Filed in District Court
State of Minnesota
9/24/2021 11:44 AM

medical device products using Dr. Amplatz's name but has stopped paying royalties and has refused to provide the agreements related to these royalties to anyone other than a duly authorized Personal Representative of the Estate.

8. An emergency exists to the extent that appointment should be made without formal notice to all interested persons because Cook Medical is an Indiana-based company and the Estate must act quickly to protect its interests in the event the dispute triggers Indiana's statute of limitations, which made expire on the applicable anniversary of Dr. Amplatz's death and possibly prior to the November 15, 2021 through December 3, 2021 trial block for which an evidentiary hearing is currently scheduled before the Court.

9. The Special Administrator's authority shall be limited to pursuing and protecting the Estate's interest in royalty payments from Cook Medical.

10. All interested persons have consented to the appointment of a neutral Special Administrator whose authority shall be limited to pursuing and protecting the Estate's interest in royalty payments from Cook Medical.

11. Both Petitioners, Security Bank & Trust Company and Maria Amplatz, have agreed to the appointment of Justice James Gilbert (Ret.) as Special Administrator.

12. Justice James Gilbert (Ret.) is a neutral Special Administrator who is not nominated in either Will offered for probate. He has agreed to serve as Special Administrator with the limited authority to pursue and protect the Estate's interest in royalty payments from Cook Medical subject to reviewing this Order.

**IT IS ORDERED:**

1. Justice James Gilbert (Ret.) is formally appointed as Special Administrator with the limited authority to pursue and protect the Estate's interest in royalty payments from Cook Medical.

2. No bond shall be required.

3. Upon filing an Acceptance of Appointment as Special Administrator and Oath, Letters of Special Administration will be issued.

**BY THE COURT:**

Grewing, Sara (Judge)
Sep 24 2021 10:27 AM

Dated: September 24, 2021

Sara R. Grewing

62-PR-20-133

Filed in District Court
State of Minnesota
9/24/2021 11:44 AM

Judge of District Court

# EXHIBIT B

**EXHIBIT B**

| | |
|---|---|
| AC-050100 | THSCF-25-60-3-AES |
| ADS-12 | THSCF-28-40-2-AES |
| ADS-14 | THSCF-32-145-3-AES |
| ARD-100-SUNG | THSCF-32-145-3-AES-BH |
| ASO-13 | THSCF-32-180-3-AES |
| ASO-15 | THSCF-32-180-3-AES-BH |
| ASO-20 | THSCF-32-260-3-AES |
| ASO-9 | THSCF-32-260-3-AES-BH |
| AUDS-1020-0-HIRATA-052888 | THSCF-32-60-3-AES |
| AUDS-1020-PIG | THSCF-35-100-3-AES |
| AUDS-1200-0-HIRATA-052888 | THSCF-35-100-3-AES-SGH-BH |
| AUDS-1200-PIG | THSCF-35-145-1.5-AES |
| AUDS-1400-0-HIRATA-052888 | THSCF-35-145-15-AES |
| AUDS-1600-0-HIRATA-052888 | THSCF-35-145-3-AES |
| AUDS-1600-PIG | THSCF-35-145-3-AES-BH |
| C-HSCF-38-100-3-AES | THSCF-35-145-3-AES-SGH |
| C-HSF-38-30-AES | THSCF-35-145-3-AES-SGH-BH |
| C-HSF-38-40-AES | THSCF-35-145-3-AUS |
| C-THSCF-25-125-SPENCER-MOD-AES | THSCF-35-145-3-AUS1 |
| | THSCF-35-145-3-AUS2 |
| C-THSCF-35-60-3-AES | THSCF-35-145-7.5-AES |
| C-THSF-35-50-AES | THSCF-35-180-15-AES |
| DK10.0-105-30 | THSCF-35-180-15-AES-BH |
| DKS18.0-105-30 | THSCF-35-180-3-AES |
| DKS24.0-105-30 | THSCF-35-180-3-AES-BH |
| DKS26.0-105-30 | THSCF-35-180-3-AES-SGH-BH |
| DKS28.0-105-30 | THSCF-35-180-3-AUS |
| DKS30.0-105-30 | THSCF-35-180-3-AUS1 |
| DKS30.0-160-30 | THSCF-35-180-3-AUS2 |
| HSF-38-30-AES-BNS | THSCF-35-180-3-AUS-BH |
| HSF-38-40-AES | THSCF-35-180-7.5-AES |
| HSF-38-40-AES-BNS | THSCF-35-180-7.5-AES-BH |
| HSF-38-40-AES-BNS-NH | THSCF-35-180-7.5-AES-SGH |
| T8.0-38-88-0-NS-ARD | THSCF-35-260-1.5-AES |
| TCMTNA-35-145-3-AMC | THSCF-35-260-15-AES |
| TCMTNA-35-145-3-AMC-BH | THSCF-35-260-15-AES-BH |
| THSCF-25-145-15-AES | THSCF-35-260-3-AES |
| THSCF-25-145-15-AES-BH | THSCF-35-260-3-AES-BH |
| THSCF-25-145-3-AES | THSCF-35-260-3-AES-SGH-BH |
| THSCF-25-145-3-AES-BH | THSCF-35-260-3-AESW-BH |
| THSCF-25-180-15-AES | THSCF-35-260-3-AUS1 |
| THSCF-25-180-3-AES | THSCF-35-260-3-AUS2 |
| THSCF-25-180-3-AES-BH | THSCF-35-260-7.5-AES-BH |
| THSCF-25-260-3-AES | THSCF-35-260-APEX-1 |
| THSCF-25-260-3-AES-BH | THSCF-35-60-3-AUS1 |

1

EXHIBIT B

| | |
|---|---|
| THSCF-35-80-3-AES | THSF-35-145-AES-SGH |
| THSCF-35-80-3-AES-BH | THSF-35-145-AES-ST |
| THSCF-35-80-3-AES-SGH | THSF-35-145-ASG |
| THSCF-35-80-3-AES-SGH-BH | THSF-35-145-ASG-BH |
| THSCF-35-80-3-AUS | THSF-35-145-AUS |
| THSCF-35-80-3-AUS-BH | THSF-35-145-AUS1 |
| THSCF-35-90-3-AUS1 | THSF-35-145-AUS2 |
| THSCF-35-90-3-AUS2 | THSF-35-145-AUS-BH |
| THSCF-38-100-3-AES | THSF-35-145-AUS-ST |
| THSCF-38-145-15-AES | THSF-35-180-AES |
| THSCF-38-145-15-AES-BH | THSF-35-180-AES-BH |
| THSCF-38-145-3-AES | THSF-35-180-AES-SGH |
| THSCF-38-145-3-AES-BH | THSF-35-180-AES-ST |
| THSCF-38-145-3-AES-SGH | THSF-35-180-ASG |
| THSCF-38-145-3-AUS | THSF-35-180-ASG-BH |
| THSCF-38-145-3-AUS-BH | THSF-35-180-AUS |
| THSCF-38-145-7.5-AES | THSF-35-180-AUS1 |
| THSCF-38-145-7.5-AES-BH | THSF-35-180-AUS2 |
| THSCF-38-180-3-AES | THSF-35-180-AUS-BH |
| THSCF-38-180-3-AES-BH | THSF-35-180-AUS-ST |
| THSCF-38-180-7.5-AES-BH | THSF-35-190-AES-HTPS |
| THSCF-38-180-3-AUS | THSF-35-260-AES |
| THSCF-38-260-3-AES | THSF-35-260-AES-BH |
| THSCF-38-260-3-AES-BH | THSF-35-260-AES-SGH-BH |
| THSCF-38-260-3-AUS2 | THSF-35-260-AES-ST |
| THSCF-38-260-7.5-AES-BH | THSF-35-260-AESW |
| THSCF-38-260-7.5-AES | THSF-35-260-ASG |
| THSCF-38-60-3-AES | THSF-35-260-ASG-BH |
| THSCF-38-80-3-AES | THSF-35-260-AUS1 |
| THSCF-38-80-3-AES-SGH | THSF-35-260-AUS2 |
| THSCF-38-80-3-AUS | THSF-35-300-AES |
| THSF-25-145-AES | THSF-35-300-AES-BH |
| THSF-25-145-AES-BH | THSF-35-300-AES-BNS-NH |
| THSF-25-180-AES | THSF-35-300-AES-SGH-BH |
| THSF-25-180-AES-BH | THSF-35-300-AES-ST |
| THSF-25-260-AES | THSF-35-400-AES |
| THSF-25-260-AES-BH | THSF-35-400-AES-SGH |
| THSF-25-260-AESW | THSF-35-60-AES |
| THSF-25-260-AESW-BH | THSF-35-60-AES-BH |
| THSF-32-260-AES | THSF-35-80-AES |
| THSF-32-260-AES-BH | THSF-35-80-AES-BH |
| THSF-32-260-AES-SGH-BH | THSF-35-80-AES-SGH |
| THSF-35-125-AES-SGH | THSF-35-80-AES-ST |
| THSF-35-145-AES | THSF-35-80-ASG |
| THSF-35-145-AES-BH | THSF-35-80-AUS |

2

**EXHIBIT B**

| | |
|---|---|
| THSF-35-80-AUS-BH | ULT10.2-38-35-P-8S-AUDC-0-HIRATA-052888 |
| THSF-35-80-AUS-ST | ULT10.2-38-50-P-6S-AUDC-PIG |
| THSF-35-90-AUS1 | ULT12.0-38-35-P-8S-AUDC-0-HIRATA-052888 |
| THSF-35-90-AUS2 | |
| THSF-38-100-AES | ULT12.0-38-50-P-6S-AUDC-PIG |
| THSF-38-100-AES-SGH | ULT12.0-38-50-P-6S-AUDC-PIG-WF |
| THSF-38-125-AES-SGH | |
| THSF-38-125-ASG | ULT14.0-38-35-P-8S-AUDC-0-HIRATA-052888 |
| THSF-38-145-AES | |
| THSF-38-145-AES-BH | ULT14.0-38-50-P-6S-AUDC-PIG |
| THSF-38-145-AES-SGH | ULT14.0-38-50-P-6S-AUDC-PIG-WF |
| THSF-38-145-ASG | |
| THSF-38-145-ASG-BH | ULT16.0-38-35-P-8S-AUDC-0-HIRATA-052888 |
| THSF-38-145-AUS | |
| THSF-38-145-AUS-BH | ULT16.0-38-50-P-6S-AUDC-PIG |
| THSF-38-180-AES | ULT8.5-38-50-P-6S-AUDC-PIG |
| THSF-38-180-AES-BH | UTSSW-10.2-10-AMP-RH |
| THSF-38-180-AES-SGH | UTSSW-10.2-16-AMP-RH |
| THSF-38-180-ASG | UTSSW-10.2-20-AMP-RH |
| THSF-38-180-ASG-BH | UTSSW-10.2-22-AMP-RH |
| THSF-38-180-AUS | UTSSW-10.2-24-AMP-RH |
| THSF-38-260-AES | UTSSW-10.2-26-AMP-RH |
| THSF-38-260-AES-BH | UTSSW-10.2-28-AMP-RH |
| THSF-38-260-AES-SGH | UTSSW-10.2-30-AMP-RH |
| THSF-38-260-ASG-BH | UTSSW-6.0-8-AMP-RH |
| THSF-38-300-AES | UTSSW-8.5-10-AMP-RH |
| THSF-38-300-AES-BH | UTSSW-8.5-12-AMP-RH |
| THSF-38-80-AES | UTSSW-8.5-16-AMP-RH |
| THSF-38-80-AES-BH | UTSSW-8.5-20-AMP-RH |
| THSF-38-80-AES-SGH | UTSSW-8.5-22-AMP-RH |
| THSF-38-80-ASG | UTSSW-8.5-24-AMP-RH |
| THSF-38-80-ASG-BH | UTSSW-8.5-26-AMP-RH |
| THSF-38-80-AUS | UTSSW-8.5-28-AMP-RH |
| THSF-38-80-AUS-BH | UTSSW-8.5-30-AMP-RH |
| THSFNA-35-145-AUS | 075000 |
| THSFNA-35-145-AUS-BH | 075000-S1 |
| THSFNA-35-180-AES | 075000-S10 |
| THSFNA-35-180-AUS-BH | 075000-S14 |
| THSFNB-35-145-AES | 075000-S17 |
| THSFNB-35-260-AES | 075000-S2 |
| THSFNB-38-145-AES | 075001 |
| TMTNA-32-145-AMC | 075001-S3 |
| TMTNA-35-145-AMC | 081212 |
| TMTNA-35-180-AMC | 081214 |
| TMTNA-38-145-AMC | |

3

EXHIBIT B

| | |
|---|---|
| 082000 | ARI-220016 |
| 082001 | ARI-240016 |
| 082002 | ARI-240024 |
| 082003 | ARI-260016 |
| 082005 | ARI-260020-32-NIM |
| 082008 | ARI-260024 |
| 082010 | ARI-280016 |
| 082012 | ARI-280020 |
| 082014 | ARI-280024 |
| 082018 | ARI-280030-40-NIM |
| 082022 | ARI-300016 |
| 082024 | ARI-300020 |
| 082114 | ARI-300022 |
| 082208 | ARI-300024 |
| 082210 | ARI-300025 |
| 082212 | ARI-300028-32-NIM |
| 082214 | ARI-300030-40-NIM |
| 082218 | ARI-320016 |
| 082222 | ARI-340016 |
| 082224 | ARI-360016 |
| 082226 | PE-320030-ARI-NIM |
| 082238 | PE-340030-ARI-NIM |
| 082247 | VS-120016-ARI |
| 082308 | VS-140016-ARI |
| 082310 | VS-160016-ARI |
| 082314 | VS-180016-ARI |
| 082318 | VS-200016-ARI |
| 082322 | VS-220016-ARI |
| 082324 | VS-240016-ARI |
| 082508 | VS-240020-ARI |
| 082510 | VS-260016-ARI |
| 082514 | VS-260020-ARI |
| 082712 | VS-280016-ARI |
| 082714 | VS-280020-ARI |
| 082718 | VS-280022-ARI |
| 082722 | VS-280030-ARI |
| 082724 | VS-300016-ARI |
| 082918 | VS-300019-ARI |
| 082922 | VS-300020-ARI |
| 082924 | VS-300022-ARI |
| 091000 | VS-300024-ARI |
| AQ-075000 | VS-300025-ARI |
| ARI-160016 | VS-300030-ARI |
| ARI-180016 | VS-320016-ARI |
| ARI-200016 | VS-340016-ARI |

4

**EXHIBIT B**

| |
|---|
| VTD-120030-ARI |
| VTD-140030-ARI |
| VTD-160030-ARI |
| VTD-180030-ARI |
| VTD-200030-ARI |
| VTD-220030-ARI |
| VTD-240030-ARI |
| VTD-260030-ARI |
| VTD-280030-ARI |
| VTD-300030-ARI |